# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

```
FILED
Apr 26 2023
Mark B. Busby
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO
```

## CRIMINAL COVER SHEET

***Instructions:*** *Effective November 1, 2016, this Criminal Cover Sheet must be completed and submitted, along with the Defendant Information Form, for each new criminal case.*

| | |
|---|---|
| **CASE NAME:** USA v. Derek Vincent Chu | **CASE NUMBER:** 3:23-cr-00122 TLT CR |
| **Is This Case Under Seal?** | Yes ✔   No |
| **Total Number of Defendants:** | 1 ✔   2-7     8 or more |
| **Does this case involve ONLY charges under 8 U.S.C. § 1325 and/or 1326?** | Yes     No ✔ |
| **Venue (Per Crim. L.R. 18-1):** | SF ✔   OAK     SJ |
| **Is this a potential high-cost case?** | Yes     No ✔ |
| **Is any defendant charged with a death-penalty-eligible crime?** | Yes     No ✔ |
| **Is this a RICO Act gang case?** | Yes     No ✔ |
| **Assigned AUSA (Lead Attorney):** Nicholas J. Walsh | **Date Submitted:** April 26, 2023 |
| **Comments:** | |

Form CAND-CRIM-COVER (Rev. 11/16)

[RESET FORM]   [SAVE PDF]

# United States District Court

FOR THE

**NORTHERN DISTRICT OF CALIFORNIA**

VENUE: SAN FRANCISCO

---

UNITED STATES OF AMERICA,

V.

DEREK VINCENT CHU,

DEFENDANT(S).

---

## INDICTMENT

18 U.S.C. § 1343 – Wire Fraud;
18 U.S.C. § 1957 – Engaging in Monetary Transactions in Property Derived from Specified Unlawful Activity;
18 U.S.C. § 2 – Aiding and Abetting;
18 U.S.C. §§ 981(a)(1)(C), 982(a)(1), 982(a)(2), 982(b)(1), and 28 U.S.C. § 2461 – Forfeiture Allegations

FILED

Apr 26 2023

Mark B. Busby
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO

---

A true bill.

/s/ Foreperson of the Grand Jury

Foreman

Filed in open court this  26th  day of

April 2023

Brittany Sims, Clerk

Bail, $ no bail arrest warrant

Hon. Lisa J. Cisneros, U.S. Magistrate Judge

1  ISMAIL J. RAMSEY (CABN 189820)
   United States Attorney

FILED

Apr 26 2023

Mark B. Busby
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> DEREK VINCENT CHU, <br><br> Defendant. | CASE NO. 3:23-cr-00122 TLT <br><br> <u>VIOLATIONS</u>:. <br><br> 18 U.S.C. § 1343 – Wire Fraud; <br> 18 U.S.C. § 1957 – Engaging in Monetary Transactions in Property Derived from Specified Unlawful Activity; <br> 18 U.S.C. § 2 – Aiding and Abetting; <br> 18 U.S.C. §§ 981(a)(1)(C), 982(a)(1), 982(a)(2), 982(b)(1), and 28 U.S.C. § 2461 – Forfeiture Allegations <br><br> SAN FRANCISCO VENUE |

<u>I N D I C T M E N T</u>

The Grand Jury charges:

<u>Introductory Allegations</u>

At all times relevant to this Indictment, unless otherwise indicated:

1.  The defendant, DEREK VINCENT CHU, resided in the Northern District of California, albeit in several different locations within the Northern District of California, including San Francisco, Pleasant Hill, and Alamo, California.

INDICTMENT
2

CHU's Businesses

2. In or about October 2011, CHU founded Openhourz, LLC ("Openhourz"), a California limited liability company. It was terminated in or about May 2015.

3. In or about August 2015, CHU founded DCHU Holdings, LLC ("DCHU Holdings"), a California limited liability company.

4. In or about May 2016, CHU founded SuiteLife, LLC ("SuiteLife"), a California limited liability company.

5. In or about October 2016, CHU founded SuiteLife Norcal, LLC ("SuiteLife Norcal"), a California limited liability company.

6. CHU operated, managed, and controlled Openhourz, DCHU Holdings, SuiteLife, and SuiteLife Norcal. Collectively, these entities are referred to in this Indictment as the "SuiteLife Entities." CHU held himself out to investors and was presented to investors as the individual who owned and controlled the SuiteLife Entities.

7. Through the SuiteLife Entities and other entities and persons, CHU solicited and raised investment money from potential investors and managed the investment funds once those monies were raised, as described below in greater detail.

8. CHU, personally and through others acting at his direction, controlled the bank accounts into which the investors' monies were placed.

9. Between approximately January 2014 and January 2020, CHU raised approximately $38.7 million from approximately 100 investors. During that time, nearly $29 million was distributed back to investors. Most of the distributions to investors were funded, not by an ongoing business activity, but instead with funds obtained directly from subsequent investors. Approximately $2.5 million was spent on investments that CHU had told the investors would be made. During that same timeframe, CHU misappropriated approximately $7.3 million of investor funds that he spent on paying credit card debts, cash withdrawals, travel, luxury automobile and jewelry purchases, and utilities bills, among other things.

INDICTMENT
3

### Other Individuals and Entities

10. "V.T." was an individual who resided in the Northern District of California, and an investor with CHU and / or one or more of the SuiteLife Entities. V.T. operated a food import business referred to herein as VICTIM COMPANY ONE.

11. "N.N." was an individual who resided outside of the State of California, and an investor with CHU and / or one or more of the SuiteLife Entities.

12. "D.F." was an individual who resided outside of the State of California, and an investor with CHU and / or one or more of the SuiteLife Entities.

13. "T.F." was an individual who resided in the Northern District of California, and an investor with CHU and / or one or more of the SuiteLife Entities.

14. "A.G." was an individual who resided in the Northern District of California, and an investor with CHU and / or one or more of the SuiteLife Entities. A.G. formed an entity referred to herein as VICTIM COMPANY TWO to be his investment vehicle with CHU and / or one or more of the SuiteLife Entities.

15. "M.B." was an individual who resided in the Northern District of California, and an investor with CHU and / or one or more of the SuiteLife Entities.

16. "M.O." was a lawyer who resided in the Northern District of California, and was an a business partner with CHU as well as CHU's lawyer for some purposes.

### CHU's Management of Investors' Money

17. During the course of his management of his investors' money, CHU regularly obtained money from investors after making representations to them about how he would use the investments. CHU regularly misused these funds in various ways and for various purposes, including paying earlier investors to simulate returns on their investments, paying credit card debts, making cash withdrawals, paying for travel, purchasing luxury automobiles and jewelry, and paying utilities bills, among other things.

18. All the while, CHU employed various deceptive acts and practices to hide his misappropriation and misuse of investor funds, including by commingling money and by moving money

INDICTMENT
4

between various entities and bank accounts (including CHU's personal accounts) whenever those funds were needed for particular purposes, all without regard to the true ownership of such money.

19. Furthermore, rather than investing and obtaining profits from the results of his investments, CHU instead regularly paid earlier investors by using the money from more recent investors.

COUNTS ONE THROUGH EIGHT:         (18 U.S.C. §§ 1343 & 2 – Wire Fraud and Aiding and Abetting)

20. The factual allegations in Paragraphs 1 through 19 are re-alleged and incorporated by reference.

### The Scheme and Artifice to Investors with CHU and the SuiteLife Entities

21. Beginning at a date unknown to the Grand Jury, but no later than late 2013, and continuing to a date unknown to the Grand Jury, but to at least January 2020, in the Northern District of California, and elsewhere, CHU knowingly devised and executed a scheme and artifice to defraud potential investors and investors with CHU and / or one or more of the SuiteLife Entities as to a material matter and to obtain money and property from those potential investors by means of material false and fraudulent pretenses, representations, and promises, and concealing material facts.

22. CHU executed the scheme and artifice by, among other things, inducing these investors to contribute money through false and misleading representations about the use to which CHU would make of that money. In sum and substance, CHU fraudulently solicited, obtained, and retained approximately $38.7 million in investors' funds based on false representations that the funds would be invested in luxury suites at the Oracle Arena in Oakland, California; the Chase Center in San Francisco, California; and the Staples Center in Los Angeles, California, as well as to purchase tickets at various events at those venues, when CHU intended to and did spend and take those funds for other purposes, and not for the benefit of the investors. CHU often discussed leasing these suites in the context of professional basketball games. To some of the investors, CHU also made misrepresentations about real estate purchases and renovations as a means to entice potential investors into giving him and / or one or

1 more of the SuiteLife Entities their money.

2     23.    In furtherance of the scheme and artifice, CHU used a variety of means and methods, including the following:

    a.    CHU induced investors to contribute money through false and misleading representations about the use CHU would make of that money, chiefly that CHU would invest the money in leasing luxury suites at the Oracle Arena in Oakland, California; the Chase Center in San Francisco, California; and the Staples Center in Los Angeles, California, as well as to purchase tickets at various events at those venues, such as professional basketball games, with an eye toward obtaining significant profits by reselling the tickets at higher prices.  CHU made these misrepresentations in person, by telephone, and through other electronic means of communications, as well as by providing promissory notes to investors that set forth the interest that the investors would be paid at defined terms. In truth, and as CHU well knew at the time he made these representations, he regularly used investment money for purposes other than leasing luxury suites or purchasing tickets, and he concealed this fact from the investors in various ways.  For example:

    i.    On or about April 13, 2018, CHU represented to V.T. that he had "already told the warriors [he was] going to allocate an additional 200k for more playoff tickets this coming week after I got the money from you….," and followed up on or about April 29, 2018, by representing to V.T. that an investment of $250,000 would "return on 6/10 interest 5k."  At the time CHU made those statements he knew that he would not use V.T.'s money for Golden State Warriors basketball tickets, nor repay the principal by June 10, 2018, nor pay interest of $5,000 to V.T.

    ii.    In or around April, May, and June 2018, CHU represented to N.N. and D.F. that CHU had a new investment opportunity in a Staples Center suite in Los Angeles, California, and that if they invested with CHU, they would be repaid pursuant to a 90-day promissory note with 10% interest. At the time CHU made these statements, CHU knew that he would not use their money for a Staples Center suite, nor repay the principal in 90 days,

INDICTMENT

nor pay 10% interest to N.N. or D.F.

  iii. On or about August 2, 2018, CHU emailed T.F. regarding an investment that the "Money is used to pay for my suite in the new Chase center in SF, opens July 2019, but have already paid them 300k of 850k for year 1." At the time CHU made these statements, CHU knew that he would not use money T.F. invested for a suite at the Chase Center in San Francisco.

  iv. On or about April 5, 2019, CHU represented to T.F. that CHU would use money T.F. invested on Golden State Warriors playoff tickets, and that if T.F. invested with CHU and /or SuiteLife, he would be repaid pursuant to a 60-day promissory note.  At the time CHU made these statements, CHU knew that he would not use T.F.'s money for Golden State Warriors playoff tickets nor repay the principal in 60 days.

  v. In or about April 2019, CHU took A.G. to the Chase Center in San Francisco and convinced A.G. to invest in a suite for Golden State Warriors games, representing to A.G. that A.G. would earn a 50% interest in the suite for $440,000.  At the time CHU made these statements, CHU knew that he would not use A.G.'s money for a suite at the Chase Center.

  vi. In or about December 2019 and January 2020, CHU told M.B. that he needed more money invested in SuiteLife to use in leasing a suite and purchasing tickets to Golden State Warriors games at the Chase Center because it was more expensive than Oracle Arena, and that if M.B. invested with CHU and /or SuiteLife, he would repaid pursuant to a one-month promissory note with 8% interest, secured by CHU's New York Life Insurance Policy.  At the time CHU made these statements, CHU knew that he would not use M.B.'s money for a suite at the Chase Center or tickets to Golden State Warriors games, nor repay the principal in one month, nor pay 8% interest to M.B. CHU also knew that his life insurance policy had lapsed and was no longer active as of November 6, 2019, and

INDICTMENT

1         thus it could not serve as collateral to the promissory note with M.B.

2     b.     CHU did not use the money provided to him by investors for the purposes that his victims intended, and, instead, he used such money for his own purposes. For example:

        i.     On or about May 1, 2018, rather than using $250,000 invested by V.T. to purchase Golden State Warriors playoff basketball tickets exclusively, CHU, and those he directed, used that money to pay a close family friend, pay a family member, pay credit card debt, pay utilities bills, and to pay back other investors.

        ii.     In June and July 2018, rather than using $196,000 invested by N.N. and D.F. to pay for Staples Center suites, CHU, and those he directed, used that money to transfer money to SuiteLife, pay attorney's fees due to M.O., and to pay a close family friend.

        iii.     Of the $70,000 T.F. invested with CHU in August 2018, December 2018, and April 2019 to be used for leasing a Chase Center suite and Golden State Warriors playoff tickets, CHU, and those he directed, used approximately $63,000 to pay other investors.

        iv.     In or about April and May, 2019, rather than using $440,000 invested by A.G. through his investment entity VICTIM COMPANY TWO to obtain a 50% interest in a suite at the Chase Center, CHU, and those he directed, used that money to obtain over 20 cashier's checks made out to many different individuals and to withdraw $10,000 in cash.

        v.     In or about January 2020, rather than using $20,000 invested by M.B. to lease a suite or purchase tickets to Golden State Warriors games at the Chase Center, CHU, and those he directed, used that money to pay another investor, pay for tax services, and to withdraw $12,500 in cash.

    c.     CHU concealed from investors that he was not using their investments for the purposes that CHU represented and the investors intended, including using more recent investor money to pay back earlier investors, lulling earlier investors into believing that their investment was operating

INDICTMENT
8

as intended. For example:

    i. On or about May 1, 2018, rather than using $250,000 invested by V.T. to purchase Golden State Warriors playoff basketball tickets exclusively, CHU, and those he directed, used some of that money to pay back other investors.

    ii. Of the $70,000 T.F. invested with CHU in August 2018, December 2018, and April 2019 to be used for leasing a Chase Center suite and Golden State Warriors playoff tickets, CHU, and those he directed, used approximately $63,000 to pay other investors.

    iii. In or about April and May 2019, rather than using $440,000 invested by A.G. through VICTIM COMPANY TWO to obtain a 50% interest in a suite at the Chase Center, CHU, and those he directed, used that money to obtain over 20 cashier's checks made out to many different individuals, many of whom were other investors.

    iv. In or about January 2020, rather than using $20,000 invested by M.B. to lease a suite or purchase tickets to Golden State Warriors games at the Chase Center, CHU, and those he directed, used some of that money to pay another investor.

24. On or about the dates set forth in the separate counts below, in the Northern District of California and elsewhere, the defendant,

DEREK VINCENT CHU,

having knowingly, and with intent to defraud, devised and intended to devise a scheme and artifice to defraud potential investors and investors with CHU and / or one or more of the SuiteLife Entities as to a material matter and to obtain money and property from those investors by means of materially false and fraudulent pretenses, representations, and promises, and by concealment of material facts, and, for the purpose of executing such scheme and artifice and attempting to do so, did transmit, and cause to be transmitted, by means of wire communication in interstate commerce, certain writings, signs, signals, pictures, and sounds, namely, the following:

INDICTMENT

9

| COUNT | ON OR ABOUT DATE | DESCRIPTION OF WIRE COMMUNICATION |
|---|---|---|
| ONE | April 30, 2018 | Wire transfer of $250,000.00 from V.T. using VICTIM COMPANY ONE to Comerica account numbered ending -3376, in the Northern District of California, which transfer was processed through Federal Reserve system computers in New Jersey and Texas |
| TWO | June 28, 2018 | Wire of $48,000.00 from D.F. in the Western District of Virginia to Wells Fargo Bank account numbered ending -1621, in the Northern District of California |
| THREE | August 2, 2018 | Email from CHU to T.F. outlining investment terms and stating money will go to Chase Center |
| FOUR | April 5, 2019 | Email exchange between CHU and T.F. attaching promissory note and confirming receipt of money |
| FIVE | April 9, 2019 | Wire of $100,000.00 from A.G. using VICTIM COMPANY TWO to Bank of the West account numbered ending -9345, in the Northern District of California, which transfer was processed through Federal Reserve system computers in New Jersey and Texas |
| SIX | April 12, 2019 | Wire of $200,000.00 from A.G. using VICTIM COMPANY TWO to Bank of the West account numbered ending -9345, in the Northern District of California, which transfer was processed through Federal Reserve system computers in New Jersey and Texas |
| SEVEN | April 22, 2019 | Wire of $140,000.00 from A.G. using VICTIM COMPANY TWO. to Bank of the West account numbered ending -9345, in the Northern District of California, which transfer was processed through Federal Reserve system computers in New Jersey and Texas |
| EIGHT | January 10, 2020 | Wire of $20,000.00 from M.B. to J.P. Morgan Chase Bank account numbered ending -9259, in the Northern District of California, which transfer was processed through Federal Reserve system computers in New Jersey and Texas |

Each in violation of Title 18, United States Code, Sections 1343 and 2.

COUNTS NINE THROUGH ELEVEN:   (18 U.S.C. §§ 1957 & 2 – Engaging in Monetary Transactions in Property Derived from Specified Unlawful Activity and Aiding and Abetting)

25.   The factual allegations in Paragraphs 1 through 24 are re-alleged and incorporated by reference.

26.   Among other transactions, on or about the dates set forth in the separate counts below, in the Northern District of California and elsewhere, the defendant,

INDICTMENT
10

DEREK VINCENT CHU,

knowingly engaged in a monetary transaction by, through, and to a financial institution, in and affecting interstate commerce, in criminally derived property of a value greater than $10,000, such funds having been derived from the specified unlawful activity of wire fraud, to wit, the wire fraud scheme alleged in Counts One through Eight.

| COUNT | ON OR ABOUT DATE | FINANCIAL TRANSACTION |
|---|---|---|
| NINE | June 28, 2018 | Posting of check #560 from Wells Fargo Bank account numbered ending -1621, in the Northern District of California, in the amount of $40,000.00, constituting a payment to SuiteLife |
| TEN | July 2, 2018 | Posting of check #564 from Wells Fargo Bank account numbered ending -1621, in the Northern District of California, in the amount of $35,000.00, constituting a payment to M.O. |
| ELEVEN | July 5, 2018 | Posting of check #566 from Wells Fargo Bank account numbered ending -1621, in the Northern District of California, in the amount of $83,500.00, constituting a payment to SuiteLife |

Each in violation of Title 18, United States Code, Sections 1957 and 2.

FORFEITURE ALLEGATIONS:   (18 U.S.C. §§ 981(a)(1)(C), 982(a)(1), 982(a)(2), 982(b)(1) & 28 U.S.C. § 2461)

27.   The factual allegations in Paragraphs 1 through 26 are re-alleged and incorporated by reference for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Sections (981(a)(1)(C), 982(a)(1), 982(a)(2), 982(b)(1), and Title 28, United States Code, Section 2461(c).

28.   Upon conviction of any of the offenses alleged in Counts One through Eight, the defendant,

DEREK VINCENT CHU,

shall forfeit to the United States, pursuant to Title 18, United States Code, Sections 981(a)(1)(C), 982(a)(2) and Title 28, United States Code, Section 2461, any property, real and personal, which constitutes or is derived from proceeds traceable to said violations, including but not limited to a forfeiture money judgment in the amount of such proceeds.

29.   If, as a result of any act or omission of the defendant, any of said property

INDICTMENT

11

  a. cannot be located upon the exercise of due diligence;

  b. has been transferred or sold to or deposited with a third person;

  c. has been placed beyond the jurisdiction of the Court;

  d. has been substantially diminished in value; or

  e. has been commingled with other property, which cannot be divided without difficulty;

the United States shall, pursuant to 21 U.S.C. § 853(p) (as incorporated by 18 U.S.C. § 982(b)(1)), seek forfeiture of any other property of said defendant up to the value of the forfeitable property described above.

  30. Upon a conviction for the offenses alleged in Counts Nine through Eleven of this Indictment, the defendant,

DEREK VINCENT CHU,

shall forfeit to the United States pursuant to 18 U.S.C. § 982(a)(1) all property, real and personal, involved in said violations, or any property traceable to such property, including but not limited to a forfeiture money judgment in the amount of the financial transactions alleged in Counts Nine though Eleven.

  31. If, as a result of any act or omission of the defendant, any of said property identified above:

  a. cannot be located upon the exercise of due diligence;

  b. has been transferred or sold to, or deposited with, a third person;

  c. has been placed beyond the jurisdiction of the Court;

  d. has been substantially diminished in value; or

  e. has been commingled with other property that cannot be divided without difficulty;

the United States shall, pursuant to 21 U.S.C. § 853(p) (as incorporated by 18 U.S.C. § 982(b)(1)), seek forfeiture of any other property of said defendant up to the value of the forfeitable property described above.

INDICTMENT

All pursuant to Title 18, United States Code, Sections 981(a)(1)(C), 982(a)(1), 982(a)(2), and 982(b)(1), Title 28, United States Code, Section 2461(c), and Federal Rule of Criminal Procedure 32.2.

DATED: April 26, 2023                                                       A TRUE BILL.

*s/Foreperson*
FOREPERSON

ISMAIL J. RAMSEY
United States Attorney

 *s/ Nicholas J. Walsh*
NICHOLAS J. WALSH
Assistant United States Attorney

INDICTMENT

# DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U.S. DISTRICT COURT

**BY:** ☐ COMPLAINT  ☐ INFORMATION  ☒ INDICTMENT  ☐ SUPERSEDING

**Name of District Court, and/or Judge/Magistrate Location:** Hon. Lisa J. Cisneros, U.S. Magistrate Judge — SAN FRANCISCO DIVISION

## OFFENSE CHARGED

Counts 1 to 8: Wire Fraud, 18 U.S.C. §§ 1343 and 2
Counts 9 to 11: Engaging in Monetary Transactions in Property Derived from Specified Unlawful Activity, 18 U.S.C. §§ 1957 and 2

☐ Petty  ☐ Minor  ☐ Misdemeanor  ☒ Felony

**PENALTY:** Please see attachment.

## DEFENDANT - U.S.

▶ DEREK VINCENT CHU

**DISTRICT COURT NUMBER:** 3:23-cr-00122 TLT

## PROCEEDING

**Name of Complaintant Agency, or Person (& Title, if any):** IRS Criminal Investigation and FBI

☐ person is awaiting trial in another Federal or State Court, give name of court

☐ this person/proceeding is transferred from another district per (circle one) FRCrp 20, 21, or 40. Show District

☐ this is a reprosecution of charges previously dismissed which were dismissed on motion of: ☐ U.S. ATTORNEY ☐ DEFENSE

SHOW DOCKET NO.

☐ this prosecution relates to a pending case involving this same defendant

MAGISTRATE CASE NO.

☐ prior proceedings or appearance(s) before U.S. Magistrate regarding this defendant were recorded under

**Name and Office of Person Furnishing Information on this form:** Ismail J. Ramsey
☒ U.S. Attorney  ☐ Other U.S. Agency

**Name of Assistant U.S. Attorney (if assigned):** Nicholas J. Walsh

## DEFENDANT

**IS NOT IN CUSTODY** — Has not been arrested, pending outcome this proceeding.
1) ☒ If not detained give date any prior summons was served on above charges ▶ _____
2) ☐ Is a Fugitive
3) ☐ Is on Bail or Release from (show District) _____

**IS IN CUSTODY**
4) ☐ On this charge
5) ☐ On another conviction  ☐ Federal  ☐ State
6) ☐ Awaiting trial on other charges — If answer to (6) is "Yes", show name of institution _____

Has detainer been filed? ☐ Yes ☐ No — If "Yes" give date filed _____

**DATE OF ARREST** ▶ Month/Day/Year _____
Or... if Arresting Agency & Warrant were not
**DATE TRANSFERRED TO U.S. CUSTODY** ▶ Month/Day/Year _____

☐ This report amends AO 257 previously submitted

## ADDITIONAL INFORMATION OR COMMENTS

**PROCESS:** ☐ SUMMONS  ☐ NO PROCESS*  ☒ WARRANT    **Bail Amount:** _____

If Summons, complete following: ☐ Arraignment ☐ Initial Appearance

* Where defendant previously apprehended on complaint, no new summons or warrant needed, since Magistrate has scheduled arraignment

**Defendant Address:** _____

**Date/Time:** _____  **Before Judge:** _____

**Comments:**

ATTACHMENT

**Counts 1 to 8: Wire Fraud, 18 U.S.C. §§ 1343 and 2**

- Maximum Sentence: 20 years
- Maximum Length of Supervised Release: 3 years
- Maximum Fine: $250,000.00 or twice the gross gain or loss
- Restitution
- Special Assessment of $100 per felony count
- Forfeiture

**Counts 9 to 11: Engaging in Monetary Transactions in Property Derived from Specified Unlawful Activity, 18 U.S.C. §§ 1957 and 2**

- Maximum Sentence: 10 years
- Maximum Length of Supervised Release: 3 years
- Maximum Fine: $250,000.00 or twice the amount of the criminally derived property involved in the transaction
- Restitution
- Special Assessment of $100 per felony count
- Forfeiture